**In re Nicolas XACUR, Alleged Debtor.**

**Bankruptcy No. 96–48539–H5–7.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

March 18, 1998.

---

See also 216 B.R. 187.

D. Michael Dalton, Houston, TX, for Debtor.

John A. Barrett, Houston, TX, for Petitioning Creditor.

## *MEMORANDUM OPINION*

KAREN K. BROWN, Bankruptcy Judge.

Before the Court is the involuntary petition, under 11 U.S.C. § 303, filed by three Mexican banks, Banco Nacional de Mexico, S.A. (Banamex), Bancomer, S.A., Institucion de Banca Multiple Grupo Financiero (Bancomer), Banco Inverlat, S.A., Institucion de Banca Multiple Grupo Financiero Inverlat (Inverlat), and one California bank, California Commerce Bank (CCB)[1] against Nicolas Xacur, a Mexican citizen who owns property in the United States. (NX 2). After the petition was filed, the Court allowed Banco Mexicano to intervene as a petitioning creditor.

Nicolas Xacur denies that this Court has jurisdiction over him under either Bankruptcy Code section 109 or the Due Process Clause of the United States Constitution and alleges that he was not properly served with summons in this case. Xacur contends that the involuntary petition is meritless because he raises bona fide disputes as to the claims of three of the five petitioning creditors and is generally paying his bills as they come due with the exception of the debts owed to the petitioning creditors. Alternatively, Xacur urges that under the facts of this case, this Court should exercise its discretion to abstain under 11 U.S.C. § 305 and/or decline jurisdiction under the doctrine of forum non conveniens Xacur seeks attorneys fees and costs under Section 303(i)(1) and (2) for the actions of the petitioning banks in filing this involuntary bankruptcy case.

After a hearing on the merits of the involuntary petition and after considering the law, the evidence, and the credibility of the witnesses, this Court denies the request for entry of an order for relief and dismisses the case without prejudice.

## I. Facts

### A. Residence

Nicolas Xacur is a citizen of Mexico. He owns a home in Mexico City that he purchased in 1983, and he resides there most of the time with his wife and children. He and his wife also own a condominium in Houston, Texas, purchased in 1981, and a condominium in Vail, Colorado, purchased in 1980. He spends approximately 20% of his time in the United States and one half of that time he spends in Houston. Each of his four children attended school in the United States for some period of years; three attended high school and/or college in Minnesota from 1992–1997, and one attended middle school in Houston for one year in 1994–1995.

Nicolas Xacur's mother travels to Houston frequently for medical treatment. When she is in Houston, she resides in an adjacent condominium purchased in the name of Lancashire Ltd., a corporation owned by Nicolas Xacur and his immediate family members. When his mother is in Houston, he employs a full-time driver for her. The same driver is employed routinely on a part-time basis to pay bills which come to Xacur's Houston condominium. These bills have consisted of utility bills and the international calling card charges incurred by Xacur's children away from home. The address for the telephone charges has recently been changed to Xacur's address in Mexico. Nicolas Xacur is listed in the Houston residential telephone directory.

In addition to Mexican driver's licenses, Nicolas Xacur, his wife, and one daughter each hold a Texas driver's license which states the Houston condominium for the driver's address. Nicolas Xacur owns two cars registered in Houston, Harris County, Texas.

Xacur offered evidence to counterbalance these links to the United States showing that he has a Mexican passport, a Mexican driver's license, and a voter registration card issued by the Mexican government. (Nx X.

---

1. California Commerce Bank is jointly owned by the same parent corporation along with its sister subsidiary bank, Banamex. CCB has offices in Mexico.

22, 25, 26). Xacur and his family reside in Mexico City for the majority of the year. His wife and children are Mexican nationals.

## B. Business Activity

Nicolas Xacur is 54 years old and has been in business in Mexico most of his life. Prior to 1995, he was employed by or was on the board of directors of three Xacur companies owned primarily by Nicolas and his three brothers: Jacobo, Felipe, and Jose Maria. The three Xacur companies involved in this case are: Hidrogenadora. Nacional S.A. de C.V. (HINSA), a manufacturer and distributor of edible oils; Proteinas y Aceites del Bajio, S.A. de C.V. (PROTABSA), a refiner and distributor of grain products; and Detergentes y Jabones Sasil S.A. de C.V. (SASIL), a manufacturer of synthetic detergents. Nicolas Xacur was employed in one capacity or another with these family companies from the 1950s until 1994. Each of these businesses is a Mexican corporation, doing business in various states of Mexico.

In addition, since 1964, Nicolas Xacur has been employed with numerous businesses of his own, including a plastics business, known as Rafytek; a bread business called Panaria y Pasteria, and real estate businesses, among others. For each entity, the principal place of business is Mexico City. Since 1992, he has owned stock in and been employed as President and General Director of a company known as Agrogen, S.A. which manufactures and sells fertilizer. The principal business office of Agrogen is in Mexico City. The Agrogen plant is located in Queretaro, Mexico. In addition to Xacur family companies, Nicolas Xacur has also served on the boards of several non-family companies, including the National Board of Directors of Banamex. He served on the Banamex board until 1997.

In 1993, Nicolas Xacur sold Rafytek, the plastics business, to another Mexican entity for $3 million in United States currency. At his direction, these monies were deposited in his personal bank account in Vail, Colorado. Subsequently, these monies were transferred to a Merrill Lynch account in Houston in the name of Lancashire Ltd., the Nicolas Xacur family-owned corporation.

In 1994, Nicolas Xacur signed pagares or promissory notes on behalf of two of the Xacur family companies: HINSA and PROTABSA in favor of the petitioning creditors. All notes were signed in Mexico. All notes were to be repaid in United States currency. The notes were to fund the purchase of raw grain products from the United States, Canada, and Costa Rica.

The petitioning creditors' claims are based on the following notes: (i) two (2) promissory notes in the original principal amounts of $3,500,000 and $3,000,000, made by HINSA in favor of Banamex, dated July 28, 1994, and August 3, 1994, respectively, signed by Nicolas Xacur, Felipe Xacur, and Jose Maria Xacur; (the "Banamex Pagares"[2]), issued pursuant to a Contracto de Apertura de Credito y Avio dated October 19, 1993 by and between Banamex and HINSA (the "Banamex Credit Agreement"); (ii) a promissory note made by HINSA in favor of California Commerce dated December 7, 1994, in the original principal amount of $6,000,000; (iii) a promissory note made by PROTABSA in favor of Bancomer dated November 3, 1994, in the original principal amount of $3,000,000; (iv) two (2) promissory notes made by HINSA in favor of Inverlat dated September 2, 1994, in the original principal amounts of $10,000,000 and $3,000,000; (v) a promissory note made by PROTABSA in favor of Inver-

**2.** These pagares are written in both Spanish and English and each contains the following provision:

For all matters related to this promissory note the undersigned and guarantors designate as their domicile Rio Lerna 150, Fracc.Ind. San Nicolas Tlalnepantla, Edo. De Mexico C.P. 54030.

Any legal action or proceeding derived from or related to this note may be brought in the courts of Mexico City, Federal District, Mexico or in the courts corresponding to the domicile of the undersigned and the guarantors, designated herein at the option of the plaintiff. The undersigned and the guarantors renouncing to the jurisdiction of any other court which they may be entitled to claim by reason of their domicile or for any other reason.

The Court finds that this clause constitutes permissive language regarding choice of forum, and the contract itself does not prevent the bank from proceeding against debtor in any other appropriate forum with regard to an involuntary bankruptcy proceeding.

lat dated September 2, 1994, in the original principal amount of $15,000,000 (the "Inverlat Pagares"); and (vi) two promissory notes made by HINSA in favor of Banco Mexicano dated July 15, 1994 and August 3, 1994, in the original principal amounts of $3,564,-570.84 and $689,070.96, respectively (the "Banco Mexicano Pagares"). PC Exhs. 10A–10I; PC Exh. 15 and 15A. The petitioning creditors and Nicolas Xacur agree that Mexican law applies to all pagares.

▇▇ Nicolas Xacur's signature appears on the notes on behalf of the corporate maker and/or as avalista. Under Mexican law, an aval is a form of financial obligation similar to that of a comaker under United States law. One gives an aval by endorsing a promissory note known as a pagare and one who gives his aval through endorsement of a promissory note is known as an avalista. Nicolas Xacur agrees that he signed these notes as avalista except for the Inverlat notes. As to those, Xacur contends that the bank altered the notes without his consent or knowledge after he signed them to make it appear that he had signed them not only as corporate representative for PROTABSA and SASIL, corporate guarantors of the debt, but also in his individual capacity as an avalista.[3]

After signing the pagares, in December 1994, Nicolas Xacur resigned from the boards of both HINSA and PROTABSA and gave all his stock in those companies to his mother by way of a family holding company with the intent that she would transfer his shares to his brother, Jacobo Xacur. Nicolas and Jacobo agreed that in return for the stock transfer, Jacobo would seek to obtain a release for Nicolas from the indebtedness. The petitioning banks contend that Nicolas Xacur remains personally liable on the notes.

In November 1994, the Mexican peso was substantially devalued. From that time the peso has continued to decline as against the dollar. In December 1994, the peso was 3.5 per $1.00 U.S. and in December 1997, the peso was 8.2 per $1.00 U.S.

Following the 1994 devaluation, HINSA and PROTABSA defaulted on the notes. The banks and Nicolas Xacur attempted to negotiate a resolution to payment of the corporate and individual debt. Nicolas Xacur met with the banks in Mexico City in March 1995; and Jacobo and Nicolas met with the banks in Miami, in March and July 1995. The Xacurs hired Bear–Stearns to propose to the banks a restructuring of the debt considering the impact of the peso devaluation on the companies' ability to service the debt and the companies' ability to compete internationally in light of Mexico's changing trade policies designed to open its markets to international competition. The Xacurs and the banks did not reach a resolution.

## C. Litigation in Mexico

▇▇ The banks filed lawsuits against the companies on the notes and against the brothers on their avals. On July 3, 1995, the Xacur family companies filed a "suspension de pagos" or Suspension of Payments (SOP) proceeding in Mexico City.[4] Thereafter, Banamex, Banco Mexicano, CCB, and Bancomer each filed proofs of claim or recognition of payment in the corporate SOP proceeding in Mexico City on the notes at issue here. The Xacur brothers did not file personal SOP proceedings and the banks did not file involuntary SOP proceedings against the Xacurs in Mexico.

In March 1995, Banamex sued Felipe and Jose Maria Xacur to collect on their avals for its notes. Banamex did not include Nicolas Xacur as a defendant in that lawsuit. Bancomer, Banco Mexicano, CCB, and Inverlat each sued Nicolas Xacur in Mexico on his avals but only Inverlat served Xacur with notice of its two lawsuits. Nicolas Xacur answered those lawsuits and did not object to

---

3. Additionally, Xacur contends that Banamex is improperly seeking a double recovery of its debt and that the Banco Mexicano loan was superseded by a novation on which only his brother Jacobo Xacur is liable and that the prior indebtedness was paid or canceled. These issues are discussed *infra*.

4. A suspension of payments proceeding is comparable to a corporate bankruptcy reorganization proceeding in the United States. Substantial litigation has occurred regarding those proceedings.

service or to the jurisdiction of the Mexican courts.

In 1996, the banks filed involuntary bankruptcy proceedings against the Xacur brothers individually in the United States District Court for the Southern District of Texas. The petitioning creditors agreed to try Nicolas Xacur's case separately from the cases of his brothers. The three brothers' cases were jointly administered for trial. In that proceeding, the brothers answered but did not personally appear at trial. Only one brother contested jurisdiction. The evidence in that case showed that while the banks were able to obtain service on those brothers in the lawsuits pending in Mexico, the brothers' absence thereafter from Mexico stymied the progress of those lawsuits. This Court granted the order for relief and the United States Trustee's Office appointed a chapter 7 trustee to administer the joint case.

## II. Requirements of an Involuntary Bankruptcy

11 U.S.C. § 303 states in part:

(a) An involuntary case may be commenced only under chapter 7 or 11 of this title, and only against a person, except a farmer, family farmer or a corporation that is not a moneyed, business, or commercial corporation, that may be a debtor under the chapter under which such case is commenced.

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $10,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

. . . .

(h) If the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed.

Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—

(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute; or . . .

## A. Xacur's Failure to Generally Pay His Debts

■ . Nicolas Xacur contends that the petitioning creditors have failed to prove that he is generally not paying his debts, because they have not introduced any evidence of his failure to pay creditors other than themselves. The petitioning creditors bear the burden of proving that Nicolas Xacur is not paying his debts as they come due. *In re Norris*, 183 B.R. 437, 455 (Bankr.W.D.La. 1995) In evaluating whether an alleged debtor is not generally paying his debts as they fall due, this court in *In re All Media Properties, Inc.*, 5 B.R. 126, 142–143 (Bankr. S.D.Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir. 1981), found that a flexible test should be used:

. . . generally not paying debts includes regularly missing a significant number of payments to creditors or regularly missing payments which are significant in amount in relation to the size of the debtor's operation. Where the debtor has few creditors the number which will be significant will be fewer than where the debtor has a large number of creditors. Also, the amount of the debts not being paid is important. If the amounts of missed payments are not substantial in comparison to the magnitude of the debtor's operation, involuntary relief would be improper.

*Id.* at 143.

The debts at issue total many millions of dollars for which Nicolas Xacur is jointly and severally liable under Mexican law. The debts have been in default since 1995. The Court is persuaded that the debts constitute a sizeable obligation for Nicolas Xacur and he is not paying them. The evidence is sufficient that Nicolas Xacur is generally not paying his debts as they become due.

## B. Bona Fide Disputes

Nicolas Xacur raises defenses to the claims of three of the five petitioning creditors. Xacur contends that, therefore, the claims are subject to a bona fide dispute disqualifying those claim holders as petitioning creditors under 11 U.S.C. § 303(b)(1). The Fifth Circuit in *In re Sims*, 994 F.2d 210, 221 (5th Cir.1993), *cert. denied Sims v. Subway Equip. Leasing Corp.*, 510 U.S. 1049, 114 S.Ct. 702, 126 L.Ed.2d 669 (1994) determined that an objective standard must be applied in determining whether a bona fide dispute exists. The *Sims* court stated:

> "[T]he petitioning creditor must establish a prima facie case that no bona fide dispute exists. Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist. Because the standard is objective, neither the debtor's subjective intent nor his subjective belief is sufficient to meet this burden. The court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute. This does not mean that the bankruptcy court is totally prohibited from addressing the legal merits of the alleged dispute; indeed, the bankruptcy court may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists. Finally, because the determination as to whether a dispute is bona fide will often depend ... upon an assessment of witnesses' credibilities and other factual considerations, the bankruptcy court's determination in this regard is a factual finding that may be overturned on appeal only if it is clearly erroneous."

*Id.* (quoting *In re Rimell*, 946 F.2d 1363, 1365 (8th Cir.1991) *cert. denied, Rimell v. Mark Twain Bank*, 504 U.S. 941, 112 S.Ct. 2275, 119 L.Ed.2d 202 (1992)).

This Court must examine each disputed claim in accordance with the objective standard set out *Sims*.

## III. Petitioning Creditor's Claims Against Nicolas Xacur

### A. Banamex Pagares

On March 29, 1996, Banamex sued Felipe Xacur and Jose Maria Xacur individually on their avals in the 9th Civil Court of Mexico. Although Nicolas Xacur also executed the pagare as avalista, Banamex did not include Nicolas Xacur in this suit as a defendant.

Xacur testified that he thought he was never included in that lawsuit because Banamex had agreed to an oral standstill with his attorney. He thought that the Banamex claims against him personally would be stayed pending a general settlement on all the Xacur claims. Banamex representatives testified Xacur failed to fulfill the conditions of the standstill agreement by failing to create a trust with assets dedicated to satisfying the Banamex debt. The Court finds that there was no enforceable standstill agreement between the parties and Banamex was not restricted in its right to proceed to collect on the debt.

Banamex filed a recognition of claim in the SOP proceeding of the Xacur family corporations. That claim includes the amount owed by Nicolas as avalista under the two pagares at issue. Xacur contends that because Banamex seeks to enforce its claim in the corporate Mexican bankruptcy under the Banamex Credit Agreement and also seeks to enforce its claim here under the pagares that Banamex improperly seeks a double recovery on its claim.

■ The Mexican law experts for Xacur and the banks agree that the same debt cannot be collected twice, and that a plaintiff may not sue to collect the same debt based on two different instruments. Nevertheless, the SOP proceeding is directed against the corporations and the bankruptcy here is directed at Nicolas Xacur individually. Since all parties agree that under Mexican law the note holder can sue both the maker and the avalista on the debt individually, Banamex is not improperly attempting to collect twice on the same debt in violation of Mexican law. Moreover, as noted by petitioning creditor's expert on Mexican law, Carlos Sanchez Mejorada, Mexican law permits a paying avalista to become subrogated to the note holder's claim against the corporate maker. Thus, no bona fide dispute prevents Banamex from

being considered a petitioning creditor for purposes of this involuntary petition.

## B. Inverlat Pagares

On March 3, 1995, Inverlat filed two lawsuits against Nicolas Xacur as avalista on its three pagares, the two pagares made by HINSA in the original principal amounts of $10,000,000 and $3,000,000 and the pagare made by PROTABSA in the original principal amount of $15,000,000. Inverlat served Xacur under Mexican law at his residence in Mexico City and Xacur answered both lawsuits. In his answer, Xacur denies any personal liability on the Inverlat pagares. Xacur contends that he signed the Inverlat pagares only once and only as a corporate representative of PROTABSA and SASIL which guaranteed the notes as corporate avalistas. Xacur contends that he never intended to obligate himself personally as an avalista. on those pagares. He alleges that the notes were altered after he signed them to include his typed name as avalista and that this alteration occurred without his agreement.

Xacur's document expert testified that from his examination of the $3 million, $10 million, and $15 million Inverlat pagares, the typed name of Nicolas Xacur was added at a different time from those of the other typed names on each pagare. In addition, it was added after Nicolas signed the pagares.

The petitioning creditors urge that the pagares are negotiable instruments and must be construed according to the face of each instrument. Since Xacur failed to handwrite on the face of the document that he was signing only in a corporate capacity, he must accept individual liability. Moreover, the petitioning creditors urge that there is an inherent contradiction in Xacur's position observable from the face of the notes. The three notes contain six signatures and six typed names. Petitioning creditors contend that debtor fails to explain why his brothers signed the notes multiple times but he signed only once, where the corporate and individual names are typed as avalistas, implying that the brothers and not Nicolas signed on behalf of the corporate avalistas, in addition to giving their individual avals. Thus, Nicolas

Xacur's signature was not needed to bind the corporations but only himself.

In reviewing the evidence, this Court agrees with the Xacur document expert and finds that the typed name of Nicolas Xacur appears to have been added at a different time from those of the other avalistas on the note. On all three notes, Nicolas Xacur's handwritten name is placed immediately over two typed corporate names and his individual name is typed last after all other typed names. Xacur's Mexican law expert, Luis Roberto Fernandez Breles, testified that the presence of Xacur's handwritten name immediately over that of the companies, would signify, under Mexican law, the intention of signing on behalf of the company. Moreover, Xacur testified that of the three brothers, he signed the pagares first and in blank. He intended to sign only one time as corporate representative. He never authorized the typing of his name individually.

The Mexican law experts for the banks and Xacur agree that the capacity in which a party signs the note is relevant under Mexican law to the signer's ultimate liability. Xacur is not required to prove that he would win at a trial on the merits of his defense to the aval in order to establish that the Inverlat debt is subject to a bona fide dispute. Based on the objective evidence offered by Xacur, the Court finds that the defense is a substantial one. The Court finds that from the four corners of the document, Xacur has raised sufficient evidence showing the document was improperly altered after he signed it to constitute a bona fide dispute as to the Inverlat claim.

## C. The Banco Mexicano Pagares

Banco Mexicano seeks to recover against Nicolas Xacur as avalista on its two pagares made by HINSA in the original principal amounts of $3,564,570.84 and $689,070.96. These notes matured on January 9, 1995 and on January 13, 1995. On February 22, 1995, Jacobo Xacur executed a new note. Nicolas Xacur is not liable on this subsequent note. The proceeds of the new note were used to make a substantial payment on the prior Banco Mexicano pagares upon which

Nicolas Xacur was liable. There remains approximately $301,000 in interest owed on the original notes. Nicolas Xacur urges that the parties agreed to a novation and the cancellation of liability for the remaining interest on the original note. The Court finds that apart from this explanation there is no other evidence supporting a novation and thus the proof is insufficient to raise a bona fide dispute concerning Nicolas Xacur's liability on the outstanding unpaid interest from the earlier pagare.

## IV. Jurisdiction

### A. Eligibility to be a debtor

11 U.S.C. § 109(a) states:

> Notwithstanding any other provision of this section, only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality may be a debtor under this title.

■ A foreign entity or individual domiciled abroad but owning property or doing business in the United States is eligible to be a debtor under 11 U.S.C. § 109. *See e.g. Bank of America N.T. & S.A. v. World of English, N.V.*, 23 B.R. 1015 (N.D.Ga.1982); *In re McTague*, 198 B.R. 428 (Bankr. W.D.N.Y.1996); *In re Spanish Cay Co. ., Ltd.*, 161 B.R. 715 (Bankr.S.D.Fla.1993). In *In re Axona Int'l Credit and Commerce Ltd.*, 88 B.R. 597 (Bankr.S.D.N.Y.1988), *aff'd* 115 B.R. 442 (S.D.N.Y.1990), court appointed Hong Kong liquidators of Axona, a wholesale bank with its principal place of business in Hong Kong, filed an involuntary chapter 7 in New York to preserve Axona's U.S. property for distribution to its creditors. The bankruptcy court reviewed the propriety of a foreign representative's invoking the court's jurisdiction and determined that the court had subject matter jurisdiction based on the location of the debtor's bank accounts. Nicolas Xacur has owned property in the United States for over 17 years. The property is substantial in value and justifies the finding that he is eligible to be a debtor under section 109.

### B. In Personam Jurisdiction

■ Xacur urges that in addition to eligibility under section 109 and subject matter jurisdiction, the petitioning creditors must prove that he is subject to this court's exercise of in personam jurisdiction over him. Assuming the validity of that position, an assertion of in personam jurisdiction over a defendant requires proof that (1) proper service of process has been effected or that the defendant waives any defects in service; (2) defendant has engaged in conduct establishing minimum contacts; and (3) that the exercise of jurisdiction over the defendant is fair and reasonable. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409–10, 98 L.Ed.2d 415 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

#### 1. Service of Process

■ "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). The petitioning creditors effected service of the involuntary petition and summons on Nicolas Xacur in accordance with Fed.R.Bankr. P.Rules 1010 and 7004(b)(1) which provide for service in the United States by first class mail postage prepaid upon an individual by mailing a summons and copy of the involuntary petition to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession. The petitioning creditors mailed the summons and complaint by U.S. mail first class postage prepaid to Nicolas Xacur at his residence in Houston, Texas. Xacur contends that his Houston condominium is not his dwelling house or usual place of abode.

■ The Court finds that the Houston condominium is a dwelling house for Xacur. *See In re Premium Sales Corp.*, 182 B.R. 349 (Bankr.S.D.Fla.1995). There must be a reasonable nexus between the defendant and the place where service is effected, however, in a highly mobile and affluent society, it is unrealistic to interpret rule 7004(b) so that the

person to be served has only one dwelling house or usual place of abode at which process may be left. 182 B.R. at 351. " 'There is nothing startling in the conclusion that a person can have two or more dwelling houses or usual places of abode, provided each contains sufficient indicia of permanence.' " *Id.* at 354 quoting *National Dev. Co. v. Triad Holding Corp.,* 930 F.2d 253, 257 (2nd Cir. 1991), *cert. denied Khashoggi v. National Dev. Co.,* 502 U.S. 968, 112 S.Ct. 440, 116 L.Ed.2d 459 (1991). Thus, in *Premium Sales,* service of process at the condominium where defendant and his wife stayed at sporadic intervals throughout the year was effective under Fed.R.Bankr.P.Rule 7004(b). The Court finds that petitioning creditors effected proper service on Nicolas Xacur.

## 2. Minimum Contacts

█ If the lawsuit arises from the defendant's activities with the forum then specific jurisdiction may exist, if the suit does not derive from the defendant's activities in the forum, then the court must find general jurisdiction over the defendant and his minimum contacts with the forum must be continuous and systematic. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Xacur agrees that the issue is not the degree of his contacts within Texas, but the degree of his contacts with the United States. He urges, however, that the petitioning creditors rely on contacts with the United States that are in fact the contacts of others, such as his family members, or on contacts that are sporadic and attenuated. The petitioning creditors contend that Nicolas Xacur has purposely availed himself of the benefits of living in and owning property in the United States for a number of years and that his contacts support both the specific and general jurisdiction of this Court.

█ Despite the petitioning creditor's urgings, this Court finds that the pagares at issue do not directly relate to Nicolas Xacur's conduct in the United States. Nevertheless, this Court finds that minimum contacts establishing specific jurisdiction exist because this involuntary bankruptcy proceeding arises from debtor's property ownership in the United States. Alternatively, the court will analyze whether defendant's contacts with the United States have been continuous and systematic for purposes of the exercise of general jurisdiction.

█ For the last 17 years, Nicolas Xacur has lived in the United States approximately 20% of his time. He owns property of significant value in Colorado and Houston. His stays in the United States are not sporadic vacations. While in the United States, he continues his business contacts with Mexico. From time to time, he has maintained sizable bank accounts in his own name and in the name of his family and business corporate entities in the United States.

The parties dispute whether the business activities of Nicolas Xacur may be considered by this Court as minimum contacts. *See Stuart v. Spademan,* 772 F.2d 1185 (5th Cir. 1985). After reviewing all the evidence, however, there is no doubt that Nicolas Xacur dominates the affairs of his family, personal, and corporate investments in the United States. He is not a subordinate taking orders from anyone else that would buffer involvement with the United States forum. In view of all the evidence at trial, this Court finds that Nicolas Xacur's long term contacts with the United States have been purposeful, continuous, and systematic.

## 3. Fairness and Reasonableness

█ In analyzing both specific and general jurisdiction, the court must evaluate whether the exercise of jurisdiction would be fair and reasonable. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985); *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 377 (5th Cir.1987). In evaluating whether the exercise of jurisdiction over an alien defendant would be fair and reasonable, the court may consider the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, and the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 2184–

85, 85 L.Ed.2d 528 (1985); *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F.Supp. 656, 666–67 (E.D.Mich.1996).

Petitioning creditors contend that the Court's exercise of jurisdiction over Xacur is fair and reasonable and no unfair burden is placed on Xacur because Xacur owns real and personal property in the United States, he has used financial institutions in the United States, and he has availed himself and his family of medical and recreational facilities and schools in the United States. Xacur contends that a bankruptcy proceeding in the United States would be unduly burdensome because he may be made to defend the pending lawsuits in Mexico and to participate in the bankruptcy proceeding here. Xacur contends that the United States has little interest in the outcome of this proceeding because the case involves Mexican creditors, a Mexican alleged debtor, and Mexican law concerning the interpretation of the avals. Xacur contends that petitioning creditors will not obtain effective relief by proceeding with the involuntary bankruptcy because Mexican procedural and substantive policy will not recognize the authority and orders of a United States bankruptcy court in an involuntary bankruptcy proceeding over a Mexican national domiciled in Mexico. The Court agrees that inconsistent results may obtain where a United States court and Mexican court are proceeding on parallel matters and that the enforceability of this Court's orders in this instance in Mexico is doubtful.

The Court finds that the exercise of jurisdiction in this involuntary proceeding would be unfair to Xacur and would bring ineffective relief to the petitioning creditors. Only Xacur's assets located in the United States may be subject to the involuntary bankruptcy. After considering the testimony of the Mexican law experts, the Court concludes that there exists a substantial possibility that the courts in Mexico may not recognize the jurisdiction of this Court. The powers and rights of a United States bankruptcy trustee may not be recognized in Mexico. The question of the recognition of a foreign bankruptcy against a Mexican citizen, domiciled in Mexico is a unique issue of Mexican law. It is possible that after years of costly litigation, the administrative expenses of the bankruptcy estate would consume the value of the United States assets. Direct litigation against Xacur is a preferable, recognized, and cost effective legal remedy available to the banks in Mexico.

Nevertheless, petitioning creditors argue that the order for relief should be entered against Nicolas Xacur as it was against Jacobo, Felipe, and Jose Maria Xacur. Petitioning creditors bear the same burden as to all alleged debtors and no evidence showed that the banks could not proceed against Nicolas Xacur in Mexico today. There is no showing that his businesses are intertwined with those of his brothers.

Moreover, Nicolas Xacur no longer owns any interest in the corporations that either made or guaranteed the promissory note to the petitioning creditors. In contrast to the three Xacur brothers, Nicolas Xacur's remaining corporate interests are distinct from those involved in the involuntary bankruptcies of the other Xacur brothers and the Mexican S.O.P. proceedings. The Court finds that jurisdiction over Nicolas Xacur does not exist because the exercise of such jurisdiction would not be fair and reasonable.

### 4. Abstention

Xacur urges this Court to abstain from exercising jurisdiction in this matter 11 U.S.C. § 305. 11 U.S.C. § 305 provides:

(a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—

(1) the interests of the creditors and the debtor would be better served by such dismissal or suspension; or

(2)(A) there is pending a foreign proceeding; and

(B) the factors specified in section 304(c) of this title warrant such dismissal or suspension.

11 U.S.C. § 304(c) provides:

(c) In determining whether to grant relief under subsection(b) of this section, the court shall be guided by what will best assure an economical and expeditious ad-

ministration of such estate, consistent with—

(1) just treatment of all holders of claims against or interests in such estate;

(2) protection of claims holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title [11 U.S.C. §§ 101 et seq.];

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

 The Court finds that the best interests of the creditors and the alleged debtor would be better served by dismissal or abstention. A Mexican court may not recognize the automatic stay of a United States bankruptcy proceeding and may not recognize the enforceability of orders issued from a United States bankruptcy court in an involuntary proceeding against a Mexican citizen and domiciliary. There are pending Mexican lawsuits to collect on some of the avals at issue and there is no impediment inhibiting the petitioning creditors from filing an involuntary bankruptcy against Xacur in Mexico. The instant involuntary bankruptcy will not result in an economical and expeditious administration of Xacur's estate because of the doubtful enforceability of bankruptcy court orders concerning a Mexican citizen and domiciliary in Mexico. The interests of comity support abstention in this case because of the conflict between United States law and Mexican law concerning the enforceability of United States bankruptcy court orders in a case involving a Mexican national and domiciliary in Mexico.

**5. Forum Non Conveniens**

 "... [T]he doctrine of forum non conveniens can never apply if there is ab-

sence of jurisdiction or mistake of venue." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 504, 67 S.Ct. 839, 841, 91 L.Ed. 1055 (1947). After considering all the evidence, if jurisdiction exists in this case, this Court dismisses the case on the grounds of forum non conveniens. "In all cases in which the doctrine of forum non conveniens comes into play, it presupposes at least two forums in which the defendant is amenable to process; the doctrine furnishes criteria for choice between them." *Id.* at 506–07, 67 S.Ct. at 842. If the court determines that an adequate alternative forum exists, then it should consider the private interests of the litigant, including the relative ease of access to proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; all other practical problems that make trial of a case easy, expeditious and inexpensive; and the enforceability of the judgment. 330 U.S. at 508, 67 S.Ct. at 843. The court should also consider the public interest factors of administrative difficulties when litigation piles up in congested centers instead of being handled at its origin; the burden on jurors where the community has no relation to the litigation; local interest in the outcome of a local controversy; and the problems of conflicts of laws. *Id.* at 508–09, 67 S.Ct. at 843. The doctrine of forum non conveniens is appropriate in a bankruptcy case. *Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824 (5th Cir.1993), *cert. denied* 508 U.S. 973, 113 S.Ct. 2963, 125 L.Ed.2d 663 (1993).

In *Delgado v. Shell Oil Co.,* 890 F.Supp. 1324, 1356 (S.D.Tex.1995) the court described availability of an alternative forum:

A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum. A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly even though they may not enjoy the same benefits as they might receive in an American court.

 All of the parties involved are subject to the jurisdiction of a Mexican court. The majority of Xacur's property to be ad-

ministered in a bankruptcy is located in Mexico. Mexico has not been shown in this case to treat the parties unfairly and does not deprive the petitioning creditors of remedies. Mexico has been found to provide an adequate alternative forum. *Seguros Comercial Americas S.A. de C.V. v. American President Lines, Ltd.,* 910 F.Supp. 1235 (S.D.Tex. 1995), judgment vacated and remanded to incorporate stipulations of parties, 105 F.3d 198 (5th Cir.1996). The Court finds that Mexico provides an adequate alternative forum for an involuntary bankruptcy against Xacur. .

The parties agree that Mexican law applies to the transactions at issue. Xacur submitted by agreement to the jurisdiction of the Mexican courts in each pagare at issue. No statute of limitations, laches, or other legal impediment prevents the banks from proceeding against Nicolas Xacur on the cases filed. The banks that have not sued him in Mexico can still do so. All the witnesses to the transaction are available in Mexico. Most importantly, unlike the defendants in the involuntary proceeding against the other Xacur brothers, Nicolas Xacur is available for service in Mexico and has shown a willingness to proceed with the cases against him. Availability of compulsory process, ease of access to proof, notice to creditors, and active participation by other creditors are factors which compel a finding that the United States is not the appropriate forum to administer Xacur's assets and to liquidate the petitioning creditors claims. Any act of this Court to compel compliance with its orders against a Mexican citizen inherently creates a diplomatic issue with Mexico. The Court finds that Mexican courts have a superior inherent interest in adjudicating the disputes in this case.

### V. Attorneys Fees

 Nicolas Xacur seeks an award of attorneys fees under 11 U.S.C. § 303(i) which provides that if the court dismisses an involuntary petition other than on consent of all petitioners and the debtor, the court may grant judgment against the petitioners and in favor of the debtor for costs or a reasonable attorney's fee or against any petitioner that filed the petition in bad faith for damages or

punitive damages. An award of attorneys fees and costs under section 303(i) is discretionary. *In re Nordbrock,* 772 F.2d 397, 400 (8th Cir.1985). The Court finds that the petitioning creditors did not act in bad faith in filing the involuntary petition. To the contrary, the petitioning creditors proved that the alleged debtor is generally not paying his debts as they come due. The Court declines to award any attorneys fees, costs, or damages to Nicolas Xacur.

It is **ORDERED** that the case is dismissed without prejudice to creditors' future involuntary petition. to the extent that Nicolas Xacur permanently removes himself from the jurisdiction of the Mexican courts at some future date so as to prevent prosecution of the civil cases in Mexico.