In re Terry A. TREXLER, Debtor.

Ralph C. McCullough, II, as Trustee for the Estate of Terry A. Trexler, South Carolina Supreme Court, The Commission on Lawyer Conduct as an entity of the Court, The Lawyers Fund for Client Protection, and Richard Ralphs, Plaintiffs,

v.

I.P., L.L.C., Trexler Enterprises, L.L.C., James A. Trexler, James W. Trexler, Hazelene Trexler, Julie C. Trexler, and Terry A. Trexler, Defendants.

Bankruptcy No. C/A 02–04126–W.
Adversary No. 03–80003–W.

United States Bankruptcy Court,
D. South Carolina.

May 22, 2003.

L. Henry McKellar, Columbia, SC, for debtor.

John Douglas Barnett, Columbia, SC, P. John Freeman, Rock Hill, SC, Palmer Freeman, Jr., Columbia, SC, Wendy A. Geurin, Memphis, TN, Nancy E. Johnson, Robinson Barton McCarthy & Calloway, Columbia, SC, for creditors.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Motion to Set Aside a

Default Under Rule 60 and a Motion to Set Aside an Order of Default under Rule 55 (the "Motions") filed by Terry A. Trexler ("Debtor") and the other Defendants in this adversary proceeding, I.P., L.L.C., Trexler Enterprises, L.L.C., James A. Trexler, James W. Trexler, Hazelene Trexler, and Julie C. Trexler (collectively, "Defendants").[1] Defendants seek to set aside an Order of Default entered on February 26, 2003 that grants judgment against Defendants as to liability and provides that Ralph C. McCullough, the Chapter 7 Trustee for Debtor's estate, South Carolina Supreme Court, The Commission on Lawyer Conduct as an entity of the Court, The Lawyers Fund for Client Protection, and Richard Ralphs (collectively, "Plaintiffs") shall have judgment in the amount shown at a damages hearing. As the basis for setting aside the Order of Default, Defendants assert that they filed their Motions timely and that setting aside the Order of Default will not prejudice Plaintiffs. Defendants also rely on affidavits to establish that the transfers in question were proper. Finally, Defendants argue that they were not properly served with the Summons and Complaint or that equitable circumstances or excusable neglect pursuant to Federal Rule of Civil Procedure 60(b)(1) and (b)(6) explain their failing to timely respond to the Summons and Complaint and support setting aside the Order of Default to address the ownership of the property at issue.[2] The Trustee disputes setting aside the Order of Default because (1) Defendants failed to provide any reason or justification for failing to respond to the Complaint, (2) Defendants have not asserted a meritorious defense, (3) Defendants failed to demonstrate good cause, (4) Defendants were properly served with the Summons and Complaint, and (5) Defendants failed to provide an equitable justification for setting aside the Order of Default. After considering the pleadings in the adversary proceeding, the affidavits and evidence presented in support of the Motions, and the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52, applicable in bankruptcy proceedings by Bankruptcy Rule 7052.[3]

### FINDINGS OF FACT

1. Debtor filed a Voluntary Petition for Chapter 7 relief on April 2, 2002. On April 5, 2002, Ralph C. McCullough, II, was appointed Trustee.

2. On January 6, 2003, Plaintiffs filed their Complaint. The Complaint consists of five causes of action: (1) Debtor fraudulently transferred his assets to Defendants, and the Trustee seeks to ___ ___ these fraudulent transfers; (2) Debtor transferred assets to I.P., L.L.C. but did not receive reasonably equivalent value, I.P., L.L.C. transferred assets to James A. Trexler, Hazelene Trexler, James W. Trexler, and Julie C. Trexler for less than reasonably equivalent value, and the Trustee seeks to avoid these transfers; (3) Debtor transferred assets to James A.

---

1. At the hearing on the Motions, the Trustee agreed to dismiss James A. Trexler as a Defendant in this adversary proceeding. Mr. Trexler passed away on December 31, 2002. Accordingly, this Order will not further address Mr. James A. Trexler as a Defendant.

2. Further references to the Federal Rules of Civil Procedure shall be by Rule number only. Further references to the Federal Rules of Bankruptcy Procedure shall be by Bankruptcy Rule number only.

3. The Court notes that, to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and, to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

Trexler, Hazelene Trexler, James W. Trexler, and Julie C. Trexler, and the Trustee seeks to set aside these preferential transfers; (4) Debtor used I.P., L.L.C. and Trexler Enterprises, L.L.C. as his alter egos, these business entities should have their corporate veils pierced, and all assets of the these business entities and all assets transferred from these entities to James A. Trexler, Hazelene Trexler, James W. Trexler, and Julie C. Trexler are assets of Debtor's estate; and (5) the individual Defendants conspired to obtain Debtor's assets and to hinder, delay, and defraud Debtor's creditors. As damages, Plaintiffs seek to recover $52,565 from Hazelene Trexler and $277,561.71 from James W. Trexler and Julie C. Trexler. Plaintiffs also seek punitive damages for their conspiracy cause of action as well as their attorneys' fees and costs.

3. On January 17, 2003, Plaintiffs served the Summons and Complaint by United States mail with sufficient postage on Debtor, Hazelene Trexler, James W. Trexler, and Julie C. Trexler at their respective residences. Plaintiffs served the Summons and Complaint by United States mail with sufficient postage upon Debtor as agent for service of process for I.P., L.L.C. and Trexler Enterprises, L.L.C. also at his residence.

4. None of Defendants responded to the Complaint within thirty days of the issuance of the Summons.

5. On February 11, 2003, the Trustee submitted an Affidavit of Default. On February 20, 2003, the Clerk of Court filed an Entry of Default, and, on February 26, 2003, the Court entered an Order of Default. The Order of Default finds Defendants liable for Plaintiffs' allegations and sets a further hearing to determine damages.

## CONCLUSIONS OF LAW

Defendants argue that the appropriate standard to apply to their Motions is Rule 55(c); however, upon reviewing Rule 55(c), the Court concludes that it should apply Rule 60(b). Rule 55(c) provides that if a judgment by a default has been entered, courts may set it aside in accordance with Rule 60(b). In this case, the Order of Default is a judgment entered against Defendants as to their liability for the allegations raised in the Complaint with the issue of damages reserved for a later hearing.

■ This Court has previously outlined the standard for reconsidering a default judgment pursuant to Bankruptcy Rule 9024:

> The decision of whether to grant a motion for relief from judgment under the standard set forth in Federal Rule of Civil Procedure 60(b) lies within the discretion of the Court. In determining whether a judgment should be set aside under the standard of Rule 60(b), the Court must engage in a two-pronged process. First, the moving party must satisfy three requirements: (1) the motion must be timely filed; (2) the moving party must have a meritorious defense to the action; and (3) the setting aside of the judgment must not unfairly prejudice the nonmoving party. Once the requirements of the first prong have been met, the moving party must next satisfy one of the six grounds for relief set forth in Rule 60(b).

*Hovis v. Grant/Jacoby, Inc. (In re Air South Airlines, Inc.)*, 249 B.R. 112, 115–16 (Bankr.D.S.C.2000) (citations omitted); *see also In re Crawford*, C/A No. 02–01266–W, slip op. at 3 (Bankr.D.S.C. May 24, 2002).

■ Regarding the first element, Defendants timely moved to reconsider the Order of Default. The Court entered the Order on February 26, 2003, and Defen-

dants filed their Motion to Set Aside a Default under Rule 60 on March 7, 2003. Defendants then filed the Motion to Set Aside an Order of Default under Rule 55 on March 21, 2003. Defendants filed the Motions nine and twenty-three days respectively after the Court entered the February 26, 2003 Order. Under these circumstances, the filings were reasonably timely and satisfy Rule 60(b), which requires a movant to file its motion no more than one year after the judgment was entered when the movant relies upon mistake, inadvertence, surprise, or excusable neglect as its ground for relief from judgment.

 The second element is whether Defendants offer a meritorious defense. "A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." In considering the issue, it is not necessary for the moving party to establish that it will prevail on the merits of the defenses raised; all that is necessary is that the moving party make a proffer of evidence which would permit a finding in his or her favor. A proffer of evidence requires more than a mere claim of a defense; rather, it involves the assertion of facts or law by testimony or affidavit, on which the defense is based.

*Air South,* 249 B.R. at 116 (citations omitted); *see also Crawford,* at 5 ("Although the movant must assert a meritorious defense, the Court does not consider or weigh the likelihood of the proffered defense's success on the merits; rather, the Court focuses solely on whether the movant proffers a defense that is good at law.") (citations omitted). In this case, the Court finds that Defendants' proffer of an alternative fact pattern as presented by affidavits and exhibits without weighing the merits meets the requirements of proffering a meritorious defense under the Rule 60(b) standard. Specifically, as to the fraudulent transfer allegation based upon 11 U.S.C. § 548(a)(1)(A)[4] and the Statute of Elizabeth, Defendants have proffered evidence that Hazelene Trexler was originally the equitable owner of the real property in question.[5] Defendants submitted cancelled checks representing the down payment on the real property, and, in her Affidavit, Ms. Trexler swears that she made the down payment by using funds from her savings account. Regarding the fraudulent transfer action based upon § 548(a)(1)(B) and the Statute of Elizabeth, Defendants proffer evidence that they paid reasonably equivalent value for the real property and personal property like equipment, supplies, and horses for the farm. Hazelene Trexler submitted cancelled checks representing monthly payments for the real property as well as purchases of equipment and supplies for the farm's operation. In his Affidavit, James W. Trexler swears that he has invested approximately $50,000 for the farm. For the third cause of action, Defendants proffer that the transfer of real property from I.P., L.L.C. to Terry was not outside the ordinary course of business but was simply a perfunctory requirement in order to obtain lending for I.P., L.L.C. as a limited liability company. Defendants also

---

**4.** Further references to the Bankruptcy Code shall be by section number only.

**5.** Defendants' evidence indicates that Debtor had legal title of the real property in August 1998 and that he transferred the property to I.P., L.L.C. in October 1998. Subsequently, I.P., L.L.C. transferred the real property in question to James A. Trexler, Hazelene Trexler, and James W. Trexler in October 2001. In December 2001, the real property in question was subsequently transferred to James W. Trexler and Julie C. Trexler.

proffer evidence in response to the piercing the corporate veil cause of action by alleging they filed annual reports for I.P., L.L.C. with the Secretary of State's Office and by submitting into evidence minutes of their meetings. These documents indicate that I.P., L.L.C. adhered to some corporate formalities. Finally, Defendants present evidence reflecting that I.P., L.L.C. is a family venture to establish a horse farm and not a conspiracy to hide Debtor's assets from creditors.

■ The third element is whether the nonmoving parties will be prejudiced by setting aside the Order of Default. The Trustee argues that he will suffer prejudice because Defendants are seeking to liquidate personal property at issue and because Plaintiffs incurred attorneys' fees to obtain the Order of Default. At the hearing, the parties agreed to the entry of an order requiring Defendants to maintain the status quo and enjoining them from transferring any assets that may be subject to this adversary proceeding, and the Court entered an Order reflecting this agreement on April 18, 2003. Therefore, the only remaining prejudice asserted by Plaintiffs are their attorneys' fees incurred in procuring the Order of Default and associated with the Motion. The Trustee asserts attorneys' fees totaling $9,698.00, Mr. Ralphs asserts attorneys' fees totaling $1,837.50, and the South Carolina Supreme Court Plaintiffs assert attorney's fees totaling $3,200.00. Previously, the Court has held that nonmovants have suffered prejudice to the extent they have incurred attorneys' fees in exacting a default judgment and in responding to a motion to set aside a default judgment. *See Crawford*, at 4. Further, any vacation of the default order was conditioned upon the movant paying the attorneys' fees incurred by the nonmovant in exacting the default and in responding to the movant's motion. *See id.* To avoid prejudice in this matter, Defendants would have to pay the total amount of reasonable attorneys' fees before any party is relieved from the Order of Default.[6] *See, e.g., Alexander v. Orangeburg Calhoun Technical College (In re Alexander)*, C/A No. 01–12241–W, Adv. Pro. No. 02–80042–W, slip op. at 4 (Bankr.D.S.C. Jul. 26, 2002) (conditioning the setting aside of an order dismissing an adversary proceeding upon the movant's payment of nonmovant's attorney's fees and costs incurred in defending the Bankruptcy Rule 9024 motion).

The Court now focuses its analysis on the second prong: grounds for relief pursuant to Rule 60(b). Defendants rely on Rule 60(b)(1) and Rule 60(b)(6), and their excusable neglect and equitable arguments center on service of process. First, Defendants argue that Debtor has a mental health condition that prevents him from having the ability to handle his legal affairs and those of the limited liability companies. Accordingly, even though Debtor does not dispute that he received the Summons and Complaint timely for himself, I.P., L.L.C., and Trexler Enterprises, L.L.C., he argues that his condition constitutes excusable neglect and that he and the business entities for which he serves as the agent for service of process should be excused for failing to file a timely answer to Plaintiffs' Complaint. In addition, Debtor argues that he was unfamiliar with the Federal Rules of Bankruptcy Procedure and that he mistakenly assumed he had more time to respond to the Complaint. Next, James W. Trexler and Julie C. Trexler assert that they were not prop-

---

**6.** Based upon its subsequent analysis of the Rule 60(b)(1) and (b)(6) issues, the Court does not believe it is necessary to engage in a detailed review of the submitted fees to determine their reasonableness.

erly served at their residence. They admit that they reside at 920 Brewington Road in Sumter, South Carolina and that they were served by first class mail at this address; however, they argue that, during the months of January and February 2003, they lived at 412 Derby Lane in Richland County, South Carolina. As a result, they never received the Summons and Complaint.[7] In essence, they argue they have a residence but that they lived somewhere else temporarily when service was effected. Finally, Hazelene Trexler asserts that she does not know if she received service of process. She notes her husband passed away on December 31, 2002, and she cannot recall receiving or not receiving the Summons and Complaint.

■ Under Federal Rule of Bankruptcy Procedure 7004, service may be effected upon individuals by mailing a copy of the summons and complaint by first class mail postage prepaid to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession. See Rule 7004(b)(1). Service may be effected upon corporations, partnerships, or other unincorporated associations by mailing a copy of the summons and complaint by first class mail postage prepaid to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process. See Rule 7004(b)(3). According to the Affidavit of Service filed on January 17, 2003, Plaintiffs served all Defendants correctly by United States mail with sufficient postage. See Mountain Nat'l Bank v. Brackett (In re Brackett), 243 B.R. 910, 914 (Bankr.N.D.Ga.2000) (noting that an affidavit of service constitutes prima facie evidence of proper service). Debtor was served at his residence, and he was served as the appointed agent for I.P., L.L.C. and Trexler Enterprises, L.L.C. at his residence as well. James W. Trexler and Julie C. Trexler were served at their residence or usual place of abode located at 920 East Brewington Road in Sumter, South Carolina, and Hazelene Trexler was served at her residence located at 2323 Wedgefield Road in Sumter, South Carolina. Because an affidavit of service constitutes prima facie evidence of proper service, the burden is placed upon the moving parties to show that they did not receive service of process. See id. (finding that the burden was not met where the movants simply denied receipt of the summons and complaint but did not support this position by affidavit or other evidence).

■ Regarding service on Debtor as an individual and as agent for service of process for the two business entities, the Court finds that Debtor's mental health condition is not excusable neglect or another equitable basis for relief under Rule 60(b)(1) or Rule 60(b)(6). Although Debtor submitted an exhibit into evidence addressing this issue, the Court finds that Debtor's prior appearances before the Court indicate that he is competent and that he had the ability to timely answer the Summons and Complaint.[8] Indeed, Debtor has previously filed timely responses to various motions in his main bankruptcy case, and he has appeared and argued before this Court at a number of hearings. In short, Debtor demonstrated mental competence in both the pleadings he filed with the Court and in the argu-

---

7. In his Affidavit, James W. Trexler swears that he was never told that he is a defendant in this adversary proceeding. In her Affidavit, Julie C. Trexler swears that she never received the Summons and Complaint and that this adversary proceeding was not brought to her attention.

8. At the hearing, the Court ordered this exhibit placed under seal.

ments he made before the Court. Because these prior actions demonstrate his ability to respond to deadlines and to comprehend the Federal Rules of Bankruptcy Procedure, the Court is not convinced by Debtor's argument of a disabling mental condition as excusable neglect for himself or the business entities for which he served as the agent for service of process.[9] Further, the limited liability companies and other Defendants who have apparently relied upon Debtor as their agent for service were knowledgeable of Debtor's legal problems and medical condition. Despite this understanding, they chose to continue to rely on Debtor, and Defendants may not now use this as an excuse in not responding timely in this adversary proceeding.

As to James W. Trexler and Julie C. Trexler, the Court finds that service at their residence or usual place of abode complies with Rule 7004(b)(1). Although these Defendants argue that Plaintiffs should have served them at their Richland County address where they lived during January and February 2003, the Court concludes that service is effective at the residence if the residence contains sufficient indicia of permanence.[10] *See Nat'l Development Co. v. Triad Holding Corp.*, 930 F.2d 253, 258 (2d Cir.1991); *In re Xacur*, 219 B.R. 956, 966–67 (Bankr. S.D.Tex.1998) ("There must be a reasonable nexus between the defendant and the

place where service is effected, however, in a highly mobile and affluent society, it is unrealistic to interpret rule 7004(b) so that the person to be served has only one dwelling house or usual place of abode at which process may be left."); *Davies v. Richards (In re Richards)*, No. 95–1374, 1999 WL 26913, at *5 (4th Cir. Jan.25, 1999) ("A 'dwelling house or usual place of abode' may be one of many residences visited periodically by the person to be served.") (citing *Nat'l Development Co.*, 930 F.2d at 256–58). Moreover, courts have noted that a temporary residence at the time of service is not a person's dwelling place or usual place of abode when a more permanent residence is shown to exist. *See First Nat'l Bank & Trust Co. of Tulsa v. Ingerton*, 207 F.2d 793, 795 (10th Cir.1953) (finding that service upon a defendant at a house she rented for her daughter was ineffective because the evidence indicated her residence was at a hotel where she received her mail and where her personal belongings and furniture were located); *DuVoisin v. Arrington (In re S. Indus. Banking Corp.)*, 205 B.R. 525, 531 (E.D.Tenn.1996), *aff'd by* 112 F.3d 248 (6th Cir.1997); *In re Sasson Jeans, Inc.*, 86 B.R. 336, 338 (S.D.N.Y. 1988) (finding that service upon a defendant by mail at her temporary residence was insufficient where the defendant had a permanent residence); 35A C.J.S. *Federal Civil Procedure* § 242 (2003) ("The

---

9. Specifically as to Debtor's argument that he was unfamiliar with the Federal Rules of Bankruptcy Procedure, the Court notes that the language of the Summons is clear and uncomplicated and requires no specialized training to understand: "You are summoned and required to file a motion or answer to the complaint which is attached to this summons with the clerk of the bankruptcy court within 30 days after the date of issuance of this summons ...."

10. Courts have found sufficient indicia of permanence where the defendant owned and furnished the apartment where he was served (*see Nat'l Development Co.*, 930 F.2d at 258), where the defendants owned and maintained a fully furnished home and employed a caretaker to live on the property year round (*see Fed. Deposit Ins. Corp. v. Scotto*, No. 97–CV–1631, 1998 WL 357324, at *3 (N.D.N.Y. Jun.29, 1998)), and where the defendant received mail, maintained a private phone line, separate bedroom, and clothes, and represented to others that the location was his residence (*see Jaffe & Asher v. Van Brunt*, 158 F.R.D. 278, 280 (S.D.N.Y.1994)).

place where one is temporarily residing is not a usual place of abode, and where temporary residence is established away from the normal or usual residence, the 'place of abode' is the usual residence regardless of the fact that defendant may be occupying the temporary residence at the time of service."). In this case, Plaintiffs served these Defendants at their residence where they apparently reside ten months of the year. *Cf. Ultrasonics, Inc. v. Eisberg (In re Ultrasonics, Inc.),* 269 B.R. 856, 861 (Bankr.D.Idaho 2001) (finding that an address where service was attempted was not the defendant's dwelling house or usual place of abode because no evidence indicated that the defendant lived at the address on either a sporadic or regular basis). Courts have upheld service to residences or usual places of abode where defendants "live" there much less than ten months each year. *See Xacur,* 219 B.R. at 966–67 (finding that service by mail pursuant to Rule 7004(b)(1) to a non-American citizen's condominium where he spent half of his time when he was in the United States, which was only twenty percent of his time, was effective service to the defendant's dwelling house); *Tropin v. Weitzman (In re Premium Sales Corp.),* 182 B.R. 349, 354 (Bankr. S.D.Fla.1995) (upholding service upon the defendant where there was a reasonable nexus between him and the condominium where the service was effected because the defendant regularly stayed in the condominium for one to four week periods sporadically throughout each year); *see also Nat'l Development Company,* 930 F.2d at 256 (upholding service upon a defendant at his dwelling house or usual place of abode where the defendant lived at the apartment thirty-four days during the year when service was effected); *Reynolds Corp. v. Nat'l Operator Services, Inc.,* 208 F.R.D. 50, 53 (W.D.N.Y.2002) (upholding personal service after finding

sufficient indicia of ownership and use as a residence where the defendants owned the property, visited it approximately three days each month, and employed a permanent housekeeper to reside at the property when the defendants were absent from it). Further, courts have upheld service even if the defendants were not at the residence or usual place of abode when service was effected. *See Jaffe & Asher v. Van Brunt,* 158 F.R.D. 278 (S.D.N.Y.1994); *Fed. Deposit Ins. Corp. v. Scotto,* No. 97–CV–1631, 1998 WL 357324, at *4 (@N.D.N.Y. Jun.29, 1998); *see also Bak v. Vincze (In re Vincze),* 230 F.3d 297, 299 (7th Cir.2000) (upholding service that complied with Rule 7004(b)(9) even though the defendants did not actually receive the summons and complaint because they were out of the country at the time service was effected). Because Rule 7004(b)(1) offers a flexible standard and because Plaintiffs served these Defendants at their usual residence, the Court finds that, under these circumstances, Plaintiffs provided proper service of process. In addition, the Court notes that these Defendants did not offer an explanation of how they handled their temporary absence from their residence or provide any details concerning the forwarding of mail, making occasional visits to retrieve mail, or entrusting their affairs to another person temporarily that might indicate why these Defendants did not receive the Summons and Complaint. *Cf. Edmondson v. Arrowood (In re Edmondson),* C/A No. 02–03848–W, Adv. Pro. No. 02–80193–W, slip op. at 3–4 (Bankr.D.S.C. Sept. 26, 2002) (finding that a defendant's failure to check his post office box in a reasonably timely fashion was no defense to the default judgment entered against him and was not a ground under Rule 60 to set aside the judgment).

■ Finally, the Court does not find excusable neglect or other equitable circumstances based upon the service of process to Hazelene Trexler. Although the Court understands that her husband passed away at approximately the same time when service of process was made, Ms. Trexler has not presented evidence to this Court like a physician's affidavit that would indicate that she was unable to handle her daily affairs or recognize the importance of the Summons and Complaint. Moreover, Ms. Trexler does not deny receiving service; she simply says she does not know whether she received it. While the Court is sympathetic to her circumstances, it cannot overlook what appears to be effective service of process without a more substantive explanation.

■ Based upon the above-stated analysis, the Court does not believe Defendants have satisfied one of the six grounds for relief under Rule 60(b). The Court finds that the service of process complied with Bankruptcy Rules and therefore is not a ground for excusable neglect or mistake. Further, the Court finds that Defendants do not satisfy the demanding standard of Rule 60(b)(6), the "catchall" provision they invoke. "As the law stands today, a court may grant a motion under Rule 60(b)(6) when the judgment was obtained by the improper conduct of the party in whose favor it was rendered or by an excusable default or in other 'extraordinary circumstances.' Put simply, the applicable rule is as follows: a Rule 60(b)(6) motion will be granted only in extraordinary circumstances or under circumstances imposing extreme or undue hardship." *Holland v. Virginia Lee Co., Inc.,* 188 F.R.D. 241, 252 (W.D.Va.1999); *see also Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 864, 108 S.Ct.

2194, 100 L.Ed.2d 855 (1988) (noting that Rule 60(b)(6) relief should only be applied in extraordinary circumstances); *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.,* 993 F.2d 46, 48 (4th Cir.1993) (same). In this case, the circumstances do not rise to the level of extraordinary, and the material presented in support of the Motions, although sufficient to proffer a meritorious defense, was not so convincing as to meet Rule 60(b)(6)'s threshold. *See Holland,* 188 F.R.D. at 252. In addition, there has been no suggestion that Plaintiffs engaged in improper conduct in obtaining the Order of Default, and Defendants will not suffer an undue hardship as a result of the Order of Default remaining in effect. At the hearing on the Motions, Defendants asserted that they intended to pay all creditors of Debtor except for Richard Ralphs whose claim is on appeal in the state court system with the permission of this Court. Defendants have returned to the state court system to establish Mr. Ralphs's claim amount. Because Defendants have a nonbankruptcy forum to settle any dispute with Mr. Ralphs and because Defendants desire to pay all other creditors, including those who are Plaintiffs in this proceeding (which is the Trustee's goal), the result of denying the Motions leaves Defendants in generally the same position they indicate they would accept: paying legitimate claims against Debtor. To the Court, this similarity of positions does not rise to the level of an undue hardship. Accordingly, the Court finds that it will not set aside the Order of Default. Although Defendants made their Motions timely and although the law disfavors defaults, Defendants did not make a proper showing to convince this Court to set aside the Order.[11]

11. The Court expresses its skepticism that all Defendants living in at least two separate

residences did not receive service of process or communicate among themselves about this

## CONCLUSION

From the arguments discussed above, it is, therefore,

**ORDERED** that Defendants Motions to set aside the Order of Default entered on February 26, 2003 are denied.

**AND IT IS SO ORDERED.**

adversary proceeding although Debtor knew of the proceeding and that his family members and the limited liability companies were named as defendants. The Court notes that, in the main case, it has previously ruled that Debtor failed to clearly, accurately, and truthfully provide information to the Court and to creditors. *See In re Trexler*, C/A No. 02–04126–W, slip op. (Bankr.D.S.C. Oct.22, 2002). The Court also notes that the Trustee attached to his Memorandum in Opposition to Motion to Set Aside Default correspondence from Robert P. Jones, a process server who unsuccessfully attempted to effect personal service of process upon Hazelene Trexler, James W. Trexler, and Julie C. Trexler on another matter in August 2002 and who concluded that these Defendants were avoiding service. With regard to service at Hazelene Trexler's home, Mr. Jones indicates that, although someone was inside the residence, the occupant twice refused to respond to his ringing the doorbell and knocking upon the door. With regard to service at James W. Trexler and Julie C. Trexler's residence, Mr. Jones indicates that a person similar in appearance to James W. Trexler denied being James W. Trexler and that subsequently no one answered the door. Mr. Jones also reports that he saw vehicles registered to Hazelene Trexler at her address when he attempted personal service and that he saw vehicles registered to Hazelene Trexler and James A. Trexler at James W. Trexler and Julie C. Trexler's address when he attempted personal service.