In re **YUKOS OIL COMPANY, Debtor.**

No. 04–47742–H3–11.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Feb. 24, 2005.

Robert Andrew Black, Jason Lee Boland, Johnathan Christiaan Bolton, Paul M. Botros, Zack A. Clement, Mark Allan

Worden, Fulbright & Jaworski LLP, Houston, TX, for Debtor.

Hugh M. Ray, Jeffrey E. Spiers, Andrews Kurth LLP, Houston, TX, J. Gregory St. Clair, Skadden, Arps, Slate, Meagher & Flom, LLP, New York, NY, Charles F. Smith, Skadden, Arps, Slate, Meagher & Flom, LLP, Chicago, IL, for Movant Duetsch Bank AG.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

The court has held a hearing on "Deutsche Bank AG's Motion to Dismiss Chapter 11 Bankruptcy Case" (Docket No. 40). The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered dismissing the above captioned case. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

This is a very large case. On the assets identified in the schedules and other pleadings filed in the instant case, it is the largest bankruptcy case ever filed in the United States. However, the debtor is not a United States company, but a Russian company, and its assets are massive relative to the Russian economy, and, since they are primarily oil and gas in the ground, are literally a part of the Russian land. While there is precedent for maintenance of a bankruptcy case in the United States by corporations domiciled outside the United States, none of those precedents cover a corporation which is a central part of the economy of the nation in which the corporation was created.

### Findings of Fact
### The Bankruptcy Petition

Yukos Oil Company filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 14, 2004. The petition was signed by Zack A. Clement, as attorney for Yukos,[1] and by Bruce K. Misamore, as Chief Financial Officer of Yukos. Attached to the petition was a resolution of the Management Board of Yukos–Moscow Ltd., the management company of Yukos, authorizing the filing of the instant Chapter 11 case in the United States Bankruptcy Court for the Southern District of Texas. The resolution recites that six members of the Management Board met (with Misamore appearing by telephone), and five of the six listed members voted for, and signed, the resolution. The resolution is not signed by the sixth member, Mikhail Trushin.

### The Pending Motion

In the instant motion, Deutsche Bank AG ("Movant")[2] seeks dismissal of the instant case. Movant asserts several grounds for dismissal. First, Movant asserts that Yukos is not eligible to be a debtor under Section 109(a) of the Bankruptcy Code. Second, Movant asserts that the instant case should be dismissed for cause, pursuant to Section 1112(b) of the Bankruptcy Code. Third, Movant asserts that the instant case should be dismissed under the doctrine of *forum non conveniens*. Fourth, Movant asserts that the case should be dismissed because Yukos will be unable to comply with the duties of a Chapter 11 debtor. Fifth, Movant asserts that the case should be dismissed on grounds of international comity. Sixth, Movant asserts that the case should be

---

**1.** Unless otherwise specified, references in this opinion to "Yukos" indicate Yukos Oil Company, the Chapter 11 Debtor.

**2.** The standing of Movant to bring the instant motion is not entirely clear from the face of the pleadings. However, the parties have agreed that this court has jurisdiction to consider the instant motion. Movant's standing as a party in interest is implied in the parties' agreement. The court will not look behind the parties' agreement to make an independent determination as to Movant's standing.

dismissed based on the act of state doctrine.

Each of these six asserted grounds for dismissal is addressed below. Movant has also sought "such other and further relief to which it is justly entitled." With regard to several of the asserted grounds, there is no United States precedent available among cases involving a voluntary bankruptcy. This case is dismissed for cause, using a "totality of circumstances" approach, which applies to all Chapter 11 cases, as discussed below.

### Background

Prior to 1993, the Union of Soviet Socialist Republics operated a command economy, in which all major industries were owned and controlled by its government. After the dissolution of the U.S.S.R., the Russian Federation (which is the successor government in Russia) adopted a constitution which declares itself to have supremacy in the whole territory of the Russian Federation, and pursuant to that constitution, enacted laws directed toward encouraging the participation of non-Russian entities in the finance of entities organized under Russian law. These laws include remedies typically found in the commercial laws of nations with market economies, and they include international arbitration, available to a commercial organization with foreign investments. ("COFI")

Yukos is an open joint stock company organized under the laws of the Russian Federation. Yukos is a holding company, which is the parent of approximately 200 subsidiary legal entities, organized under the laws of, *inter alia*, the Russian Federation, Cyprus, and the United Kingdom. On the petition date, Yukos operated through several subsidiaries, including Russian subsidiaries Yukos–Moscow, Ltd.,

Yuganskneftegas, Tomskneft, and Samaraneftegas, British Virgin Islands subsidiaries Yukos International, B.V.I., Yukos Hydrocarbons, B.V.I., and Brittany Assets, Ltd.,[3] and Texas corporation Yukos USA, Inc. (which was incorporated one day prepetition, and is wholly owned by Yukos International, B.V.I.). Additionally, Yukos has a small number of oil and gas licenses in Russia, which it holds in its own name.

Misamore testified that, under Russian law, an entity which is a "juridical person," which need not be an individual, may serve as the chief executive officer of a joint stock company. Yukos–Moscow, Ltd. is the chief executive officer of Yukos. Steven Theede is the individual who acts as the chief executive officer of Yukos, in his capacity as an employee of Yukos–Moscow, Ltd.

In an affidavit filed concurrently with the petition in the instant case, Misamore, who presently resides in Houston, Texas, states that Yukos became Russia's first fully privatized oil company during 1995 and 1996.

Misamore testified that substantially all of the affiliates and subsidiaries of Yukos are Russian companies, that substantially all of the assets of the affiliates and subsidiaries are in Russia, and that Yukos and its subsidiaries and affiliates have approximately 100,000 employees, nearly all of whom live and work in Russia.

Some of the funds used for Yukos' operations and acquisitions came from loans and/or equity contributions of investors from outside Russia, including individual and institutional investors in the United States. One group of shareholders, which states it is composed of American and Western European investors, filed an affi-

---

**3.** The entities organized in the British Virgin Islands appear in some of the documents as "U.K. BV" entities, and elsewhere as "B.V.I." entities.

davit (Docket No. 145) stating that the investors in the group hold at least 10 percent of the shares of Yukos. A second group of shareholders, which states it is composed of non-Russian investors, filed an affidavit (Docket No. 146) stating that the investors in the group hold approximately 51 percent of the shares of Yukos.[4] Both groups filed responses (Docket Nos. 133, 140) supporting Yukos' position in opposition to the instant motion to dismiss.

### Precipitating Events and Attempted Remedies

Yukos' disputes with agencies of the Russian government precipitated the filing of the instant Chapter 11 case. Steven Theede, Yukos' acting chief executive officer, testified that on October 25, 2003, approximately five weeks after Theede began working at Yukos as the chief operating officer, Mikhail Khodorkovsky, who was then Yukos' chief executive officer, was arrested. Theede testified that, beginning in December, 2003, the Russian government began to retroactively assess[5] taxes for periods beginning during 2000. He testified that the aggregate of the retroactively-assessed taxes was $27.5 billion. Theede was a credible and competent witness.

Theede testified that, during the period after the taxes were assessed, Yukos appealed the tax assessment, and began negotiations with the Russian government. Misamore testified that the negotiations were necessary because the Russian government had frozen Yukos' assets and bank accounts, and half of Yukos' revenues were being applied to tax payments.

In addition, on April 23, 2004, Yukos filed an application, before the European Court of Human Rights, seeking relief. (Deutsche Bank Exhibit 8). Theede testified that among the issues Yukos was negotiating with the Russian government was the election of a new board of directors. He testified that, although he believed the Russian government was sincere in negotiating, he had heard rumors of a plan to divest Yukos of its largest subsidiary. He testified that the management board of Yukos met on November 2, 2004, and gave 45 days' notice of an extraordinary general meeting of shareholders, to be held on December 20, 2004. The management board additionally gave 75 days' notice of another extraordinary general meeting of shareholders, to be held on January 13, 2005, in order to consider election of a new board of directors.

Theede testified that three courses of action were placed on the agenda for the December 20, 2004 extraordinary general meeting of shareholders. First, the shareholders were to consider adoption of the restructuring Yukos was negotiating with the Russian government. Second, the shareholders were to consider an orderly liquidation of Yukos' assets. Third, the shareholders were to consider bankruptcy under Russian law.

On November 19, 2004, the Russian government announced that it would conduct a sale of Yukos' shares of its largest subsidiary, Yuganskneftegas ("YNG"), at an auction, to be conducted on Sunday, December 19, 2004, one day prior to the first extraordinary general meeting of Yukos' shareholders in which the shareholders

---

4. The court notes, however, that Misamore testified at the hearing on the temporary restraining order that a Russian citizen indirectly owns some of the shares held by the second group, such that the total of shares held by non-Russians is approximately 17 percent.

5. The court notes that, under United States tax law, the term "assessment" is a term of art, with a specified statutory meaning. In the instant opinion, the term "assessment" is used in its more general form.

were to consider their options. YNG was responsible for approximately 60 percent of Yukos' revenue. Misamore testified that he was unaware of any other auction sales by agencies of the Russian government that were scheduled on a Sunday.

Misamore testified that, on November 23, 2004, he left Moscow, Russia, and traveled to London, England. He testified that while he was in London, on December 3, 2004, he asked David Godfrey, the vice president-legal of Yukos–Moscow, to seek alternatives to stop the auction of YNG shares. Misamore then traveled to Houston, and arrived on December 4, 2004. He testified that he has conducted the activities of the chief financial officer of Yukos from his home in Houston, Texas since December 4, 2004.

Misamore testified that, on December 7, 2004, Yukos consulted with Fulbright & Jaworski ("F & J"), its counsel in the instant case. He testified that, on December 10, 2004, the management board of Yukos–Moscow passed a resolution to authorize filing of the instant Chapter 11 case. He testified that, on the same date, Misamore caused Yukos Hydrocarbons to transfer $1 million to F & J for the benefit of Yukos.

On December 14, 2004, the date on which the petition in the instant case was filed, Darice Angel, of F & J, incorporated Yukos USA, Inc., a Texas corporation. The articles of incorporation list Misamore as the sole director. (Deutsche Bank Exhibit 3).

Misamore testified that, on December 14, 2004 at 1:30 p.m., approximately $480,000, the remainder of the $1 million transferred to F & J by Yukos Hydrocarbons after F & J deducted a payment for services rendered, was transferred from F & J to Yukos USA's account at Southwest Bank of Texas.

The petition in the instant case was filed on December 14, 2004, at 3:06 p.m. Misamore testified that, on the petition date, but before the petition in the instant Chapter 11 case was filed, Yukos filed a notice of arbitration demanding arbitration of its disputes with the Russian government. The notice of arbitration is not in evidence, and Misamore did not testify as to where such notice was filed.

Misamore testified that, after the petition was filed in the instant case, Misamore caused Brittany Assets, Ltd. to transfer an additional $1.5 million to Yukos USA, for the benefit of Yukos. Subsequently, Misamore caused a loan document to be prepared, reflecting a transfer of funds from Brittany Assets, Ltd. to Yukos USA, "as of" December 14, 2004. The document was signed by Misamore for Yukos USA and by Theede for Yukos. (Deutsche Bank Exhibit 2–B–1). An additional document was prepared, dated December 14, 2004 and signed by Misamore, acknowledging receipt of the $1.5 million by Yukos USA. (Deutsche Bank Exhibit 2–B–3). Misamore testified that although the documents reflect a date of December 14, 2004, the funds were not received until December 15, 2004, Houston time, in Yukos USA's account at Southwest Bank of Texas, due to differences in banking hours and time zones worldwide.

Misamore testified that Brittany Assets Ltd. transferred an additional $20 million to Yukos USA, on or about December 22, 2004, for the benefit of Yukos. Misamore testified at trial that the additional money was transferred to Yukos USA for the purpose of providing financial stability to continue the bankruptcy case and associated litigation. However, on confrontation with his deposition of February 10, 2005, Misamore also stated that the additional money was deposited to bolster Yukos' argument in favor of jurisdiction in this

court. Misamore's deposition testimony is supported by an email from Misamore to Sergei Ketcha, a director of several of the Yukos entities, stating that the money needed to be transferred "[i]n order to create a better case for jurisdiction." (Deutsche Bank Exhibit 1).

Theede testified that Yukos' goals in filing the instant Chapter 11 case in the United States were to obtain a halt in the Russian government's actions to enforce its tax claims, to obtain the financial flexibility to obtain loans superior to claims of the Russian government, to finance operations, to restructure tax debt, and to create a surviving entity to seek redress against the Russian government and other entities on behalf of shareholders, employees, and creditors.

Contemporaneously with the filing of the petition in the instant Chapter 11 case, Yukos filed, *inter alia,* motions seeking authority to serve creditors and other parties in interest (including entities within the Russian government and other foreign entities) by electronic mail; to maintain its funds in foreign bank accounts not backed by the full faith and credit of the United States; and to compel the Russian government to submit to international arbitration of its disputes with Yukos. In addition, Yukos filed a motion seeking a declaratory order that United States law applies to Yukos' property located in foreign nations, and filed an adversary complaint requesting entry of a temporary restraining order, preliminary injunction, and permanent injunction to prevent the sale of YNG.

This court has previously issued a temporary restraining order, in Adversary No. 04–3952, related to the instant case. The findings made in the court's Memorandum Opinion with regard to the temporary restraining order have been supported by the additional evidence presented at the hearing on the instant motion, but extensive evidence on the underlying events in Russia was not presented at the hearing on the instant motion, since the discovery conducted between the time of the entry of the temporary restraining order and of the hearing on the instant motion to dismiss, was aimed at evidence relevant to the motion to dismiss. While it appears likely that agencies of the Russian government have acted in a manner that would be considered confiscatory under United States law (in that Misamore testified at the hearing on the application for temporary restraining order that taxes retroactively assessed for 2002 and 2003 were in excess of Yukos' total revenue for 2001 and 2002, and in excess of 80 percent of Yukos' total revenue for 2003), and that this has affected non-Russian investors (who Misamore testified at the hearing on the application for temporary restraining order hold approximately 17 percent of Yukos' shares), the question now before this court in considering the instant motion to dismiss is not so much whether wrongs have occurred, as it is whether the United States bankruptcy courts present a proper and suitable forum for addressing the needs of this Debtor and its creditors and equity security holders.

On February 11, 2005, Yukos filed a Chapter 11 plan of reorganization (Docket No. 125). The proposed plan generally provides for subordination of tax claims[6] of the Russian government, and creation of a litigation trust to pursue causes of action Yukos believes it has (including causes of action it believes may arise or have arisen in the instant Chapter 11 case and in Adversary No. 04–3952).

### The Views of the Experts

One of the experts in Russian law presented at the hearing was Professor Wil-

---

6. This court makes no finding or conclusion as to the finality of the underlying tax matters.

liam Butler, a professor at the University of London, England and a visiting professor at Washington and Lee University in Virginia, and an author of a leading translation from Russian into English of Russian legal materials. He testified that a vote of shareholders would have been unnecessary in order to place Yukos into Russian bankruptcy. He testified that, under the Russian bankruptcy system, the Russian tax claims would have first priority of payment. He testified that, if Yukos had sought bankruptcy in Russia, the Russian government, as the largest creditor, would have taken control of the proceeding. Butler further opined that arbitration was unavailable to Yukos, under the Russian Foreign Investment Law of 1999 ("RFIL"), because there was no written agreement to arbitrate.

Professor Butler believes Yukos is not a COFI, and believes that the term "nationalization," from which a COFI is protected under the RFIL, did not include the acts of the Russian government in assessing taxes against Yukos, and seizing its assets, even if the taxes and seizure were massive. He believed that technically, this was not "nationalization," a term which was not defined in the Russian law. He noted that the only historical antecedents in Russia for "nationalization" were Bolshevik takeovers, and certain more recent narrow orders bearing the word "nationalization" in the title. He noted that Articles 8 and 10 of the RFIL mentioned only two forms of taking, "nationalization" and "requisition," and testified that "there are at least eight other forms [of taking] out there."

David Anderson, a self-employed barrister residing in London, who practices before the European Court of Human Rights ("ECHR"), testified as an expert in the area of ECHR procedures and remedies. He testified that the ECHR has never awarded a significant sum of money as damages for violation of a right. He testified that the ECHR tends to "proceduralize" disputes, and to compensate litigants for the lack of an adequate procedure, rather than for the substantive damage they may have suffered. Additionally, Anderson testified that there exists no effective enforcement mechanism for awards from the ECHR. He testified that the possibility that Russia might secede from the European Convention rather than pay a significant award might strain to its limits the procedures and remedies available to the ECHR.

Peter Maggs, a professor at the University of Illinois College of Law, author of another leading translation of Russian legal materials into English, also testified as an expert in Russian law. He testified that there are three parallel systems of courts in Russia. He testified that, in the arbitrazh courts which handle bankruptcy matters, Yukos would be unlikely to be granted relief. He testified that if Yukos were permitted to go into bankruptcy in Russia, the proceeding would be controlled by the tax authorities. He testified that, once the tax authorities gained control of a putative Russian bankruptcy, they would be able to cause Yukos to dismiss its claims in the ECHR.

Additionally, Professor Maggs testified as to irregular procedures in the Russian courts. He testified that, in the appeal brought by Yukos of the Russian government's tax claims, the courts allowed assessment of taxes after a relevant statute of limitations had expired, and arrested Yukos' lawyer, thus depriving it of counsel.[7]

---

**7.** Indeed, the testimony of several of the witnesses was that a number of Yukos' officers and attorneys have been arrested. This raises serious questions regarding the rights of indi-

Professor Maggs opined that Yukos is indeed a COFI under the Russian Foreign Investment Law of 1999. He testified that the language used in the RFIL to define a COFI is exactly like that used in the joint stock company law, such that a joint stock company may be a COFI. He testified that the Russian high commercial court, a court whose precedent would be binding on lower courts, has held that a joint stock company may be a COFI.

Professor Maggs disagrees with Professor Butler's contention that the RFIL is not a binding guarantee to foreign investors of a right to resort to international arbitration with respect to any disputes with the government. Professor Maggs opined that the plain language of the statute compels the construction that Yukos is entitled, because it is a COFI, to international arbitration.

Thomas Wälde, professor at the University of Dundee, Scotland, tendered as an expert on international arbitration of investment disputes, testified that Articles 8, 10, and 4.5 and the preamble to the RFIL create a right of arbitration for Yukos. He testified that, notwithstanding any determination this court might make, the arbitral tribunal would make its own determination of whether it had jurisdiction to decide the dispute before it.

Wälde opined that he would consider it legal malpractice to recommend investment in Russia without the availability of international arbitration as a remedy. He testified that "[a]ny other way would subject an investor to the vagaries of politically-dominated" opponents.

Wälde testified that the Energy Charter Treaty requires submission by Russia to international arbitration with respect to investment disputes. He testified that Russia has signed, but not ratified, the Energy Charter Treaty. He testified that the Energy Charter Treaty requires that signatories apply it provisionally, before the treaty is ratified.

Article 45, Section 1 of the Energy Charter Treaty provides: "Each signatory agrees to apply this Treaty provisionally pending its entry into force for such signatory in accordance with Article 44, to the extent that such provisional application is not inconsistent with its constitution, laws or regulations."

### Conclusions of Law

### Jurisdiction

The requirement that jurisdiction be established as a threshold matter is inflexible and without exception, for jurisdiction is power to declare the law, and without jurisdiction, the court cannot proceed at all in any cause. *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).

The jurisdiction of a United States Bankruptcy Court is constrained by United States statute, and by the United States Constitution. *Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

In the United States, the United States Constitution, the laws made in pursuance thereof, and all treaties made under the authority of the United States, are the supreme law of the land. U.S. Const., Art. VI, § 2.

Under the authority of the Constitution, the United States Congress was empowered to enact laws on the subject of bankruptcies. U.S. Const., Art. I, § 8.

Congress has conferred upon the United States District Court original and exclusive jurisdiction over all cases under Title 11,

vidual employees, shareholders, and managers of Yukos.

and original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to a case under Title 11. 28 U.S.C. § 1334.

The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate. 28 U.S.C. § 1334(e).

■■■ Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate. *Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403. This broad grant of jurisdiction extends to extraterritorial application of the Bankruptcy Code as it applies to property of the bankruptcy estate. *In re Simon,* 153 F.3d 991 (9th Cir.1998), cert. den., 525 U.S. 1141, 119 S.Ct. 1032, 143 L.Ed.2d 41 (1999); *In re Globo Comunicacoes E Participacoes S.A.,* 317 B.R. 235 (S.D.N.Y.2004)

All cases and proceedings arising under the Bankruptcy Code may be referred by the United States District Court to the United States Bankruptcy Court. 28 U.S.C. § 157.

In the Southern District of Texas, the United States District Court has referred to the Bankruptcy Judges of the Southern District of Texas, all bankruptcy cases, and all proceedings arising under Title 11 or arising in or related to a case under Title 11, except matters on appeal. (Gen. Ord. 2002 2, U.S. Dist. Ct., S.D. Tex.). Thus, the United States Bankruptcy Court for the Southern District of Texas exercises the judicial power of the United States as a unit of the United States District Court for the Southern District of Texas. *See* 28 U.S.C. § 151.

The United States Constitution limits the jurisdiction of the federal courts to the resolution of actual cases and controversies. U.S. Const. Art. III, § 2. The case or controversy requirement must be satisfied in all actions. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

The case or controversy provision requires that the entity which commences the case have standing to sue. *Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911).

Section 109(a) of the United States Bankruptcy Code provides that: "only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor" under Title 11. 11 U.S.C. § 109(a).

In the instant motion, Movant argues that Yukos is not eligible to be a debtor under Section 109(a) of the Bankruptcy Code, for the reasons that Yukos has no place of business or property in the United States.

With respect to the argument that Yukos has no place of business in the United States, Misamore testified that he has conducted the activities of the Chief Financial Officer of Yukos out of his home since December 4, 2004. Yukos cites *In re Brierley,* 145 B.R. 151 (Bankr.S.D.N.Y.1992) and *In re Paper I Partners, L.P.,* 283 B.R. 661 (Bankr.S.D.N.Y.2002) for the proposition that a single representative of a foreign entity working in the United States is sufficient to establish a place of business in the United States.

■■■ However, the court need not address fully whether the activities of Misamore are sufficient to establish a "place of business" in the United States. The use of the disjunctive in Section 109 indicates alternatives and requires that the alterna-

tives be treated separately. *In re Affiliated Food Stores, Inc.*, 134 B.R. 215 (Bankr. N.D.Tex.1991), *citing Quindlen v. Prudential Ins. Co.*, 482 F.2d 876 (5th Cir.1973).

Several courts have held that nominal amounts of property located in the United States enable a foreign corporation to qualify as a debtor under Section 109(a) of the Bankruptcy Code. The courts have noted that there is "virtually no formal barrier" to having federal courts adjudicate foreign debtors' bankruptcy proceedings. *In re Globo Comunicacoes E Participacoes S.A.*, 317 B.R. 235 (S.D.N.Y.2004), *citing In re Aerovias Nacionales de Colombia S.A. (In re Avianca)*, 303 B.R. 1 (Bankr.S.D.N.Y.2003); *In re Global Ocean Carriers, Ltd.*, 251 B.R. 31 (Bankr.D.Del. 2000). The rationale of these cases, which derives from Section 2(a)(1) of the Bankruptcy Act of 1898, the predecessor to Section 109 of the Bankruptcy Code, is that where a debtor has property in the United States, the United States courts may exercise discretion as to whether to administer that property or to defer to foreign courts. *Banque de Financement, S.A. v. First Nat'l Bank of Boston (In re Banque de Financement, S.A.)*, 568 F.2d 911 (2d Cir.1977). The procedural mechanisms for such a determination include Sections 305 and 1112 of the Bankruptcy Code. *See In re Avianca*, 303 B.R. 1, 16–17 (Bankr.S.D.N.Y.2003).

Misamore testified that he deposited funds of Yukos in an account at Southwest Bank of Texas, styled in the name of Yukos USA, Inc., an entity created for the specific purpose of depositing such funds belonging to Yukos. The court finds that the funds deposited by Misamore in the Southwest Bank of Texas account prepetition (approximately $480,000) are property of Yukos.[8] The court concludes that Yu-

kos has standing to be a debtor under Section 109(a) of the Bankruptcy Code. The court concludes that it has subject matter jurisdiction with respect to the instant case.

### *Forum Non Conveniens*

■ The court next turns to the nonbankruptcy doctrines which Movant argues justify dismissal. Movant asserts that the doctrine of *forum non conveniens* justifies dismissal of the instant case.

The court has discovered no published opinions on the question of whether the doctrine of *forum non conveniens* applies with respect to the entirety of a voluntary case. The only published opinions relate either to adversary proceedings related to a bankruptcy case, or to the determination of whether an order for relief should be entered in an involuntary case. Movant cites *In re Xacur*, 219 B.R. 956 (Bankr. S.D.Tex.1998) for the proposition that the doctrine of *forum non conveniens* applies to dismissal of a case. In *Xacur*, four Mexican banks and one California bank filed an involuntary petition against a Mexican citizen who owned property in the United States. The court held that it lacked personal jurisdiction over the alleged debtor, and dismissed on that ground. As an alternative holding, the court addressed the question of *forum non conveniens*, concluding that Mexico provided an adequate alternative forum to the United States. The court in *Xacur* cites *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824 (5th Cir.1993) for the proposition that the doctrine of *forum non conveniens* is appropriate in a bankruptcy case. However, *Fairchild Aircraft* is of limited applicability to the instant case, since it was not dismissal of the entirety of a voluntary

---

**8.** Approximately $22 million of funds deposited in the Southwest Bank of Texas account

have now been deposited into the court's Registry.

Chapter 11 proceeding which was sought, but rather dismissal of a wrongful death action related to the bankruptcy case of Fairchild Aircraft based on the crash of one of its planes in Germany.

In *Fairchild Aircraft*, the Fifth Circuit held that the court's power to transfer an action under the doctrine of *forum non conveniens* derives from the court's inherent power, under Article III of the Constitution, to control the administration of the litigation before it and to prevent its process from becoming an instrument of abuse, injustice, or oppression. *Fairchild Aircraft*, 981 F.2d 824, 827, *citing In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir.1987), *aff'd in part, vacated in part*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989), *vacated sub nom. Lopez v. Pan Am World Airways, Inc.*, 883 F.2d 17 (5th Cir.1989).

■ As noted above, this court exercises the judicial power of the United States on reference from the District Court, pursuant to 28 U.S.C. § 151. This court possesses the inherent power to control the administration of the litigation before it. *In re First City Bancorporation of Texas, Inc.*, 282 F.3d 864 (5th Cir.2002). However, with respect to bankruptcy cases (as opposed to proceedings arising under or related to bankruptcy cases), Congress has statutorily prescribed exclusive jurisdiction and venue. *See* 28 U.S.C. §§ 1334, 1409. This court declines to extend either *Fairchild Aircraft* or *Xacur* to conclude that the doctrine of *forum non conveniens* requires dismissal of a voluntary bankruptcy case.

### Comity

■ Likewise, with respect to the doctrine of international comity, this court is aware of no published decision dismissing a voluntary bankruptcy case filed in the United States on grounds of international comity. Movant couches its argument with respect to comity in jurisdictional terms, arguing that the court's exercise of jurisdiction over Yukos is unreasonable, because Yukos has minimal property in the United States, is incorporated in Russia, has as its largest indirect shareholder a Russian citizen, and only one of its employees, Misamore, is located in the United States.

■ Comity is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws. *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895).

Several courts have applied the doctrine of comity to give effect, in proceedings commenced in the United States, to judgments rendered by courts of competent jurisdiction in other nations with a system of procedures compatible with the requirements of due process of law. *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895); *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana S.A. de C.V.*, 347 F.3d 589 (5th Cir.2003); *Cunard S.S. Co. v. Salen Reefer Services AB*, 773 F.2d 452 (2d Cir.1985); *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406 (9th Cir.1995), *cert. den.*, 516 U.S. 989, 116 S.Ct. 519, 133 L.Ed.2d 427 (1995); *Ma v. Continental Bank, N.A.*, 905 F.2d 1073 (7th Cir.1990), *cert. den.*, 498 U.S. 967, 111 S.Ct. 430, 112 L.Ed.2d 414 (1990).

Courts have additionally dismissed proceedings between litigants in circumstances in which a foreign bankruptcy proceeding is pending, and equitable principles demand that all claims against the debtor's limited assets be addressed in a single proceeding. *Finanz AG Zurich v.*

*Banco Economico, S.A.,* 192 F.3d 240 (2d Cir.1999); *Allstate Life Ins. Co. v. Linter Group, Ltd.,* 994 F.2d 996 (2d Cir.1993); *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709 (2d Cir.1987); *Cunard S.S. Co. v. Salen Reefer Services AB,* 773 F.2d 452 (2d Cir.1985).

This court has found no authority for the proposition that in a case in which a foreign entity voluntarily avails itself of the United States Bankruptcy Court as a forum, comity requires the dismissal of the case. The court concludes that considerations of comity with respect to dismissal of a voluntary Chapter 11 bankruptcy case do not form an independent basis for dismissal, but rather must be considered in connection with a determination of whether cause exists for dismissal pursuant to Section 1112 of the Bankruptcy Code.

### Act of State Doctrine

Movant next argues that dismissal is required because, under the act of state doctrine, a United States court should not adjudicate a politically sensitive dispute which would require the court to judge the legality of the sovereign act of a foreign state.

Debtor contends that the act of state doctrine does not apply, based on Section 15 of the Federal Arbitration Act, and the 1958 New York Convention on the Recognition and Enforcement of Arbitral Awards.

 Under the act of state doctrine, every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory. Redress of grievances by reason of such acts must be obtained through the means available to sovereign powers as between themselves. *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964), *citing Underhill v. Hernandez,* 168 U.S. 250, 18 S.Ct. 83, 42 L.Ed. 456 (1897).

Congress has recognized the need for a coordinating mechanism between the insolvency laws of the United States and of other jurisdictions, and has provided such a coordinating mechanism, through the option of filing of a case ancillary to a foreign proceeding. 11 U.S.C. § 304. However, Congress has not provided such a coordinating mechanism in circumstances in which the foreign "proceeding" is not an insolvency proceeding. Moreover, in the absence of applicable treaties, Congress has not provided a coordinating mechanism for the resolution of disputes between a foreign entity and United States investors. The court also notes that, in light of the size of the underlying transactions and the purported acts of the Russian government, as well as its apparent refusal to accept service of process, resolution of matters raised in this case with respect to the Russian government may rise to the level of the conduct of foreign policy, which is reserved to the President of the United States. *See Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964); *American Ins. Assoc. v. Garamendi,* 539 U.S. 396, 123 S.Ct. 2374, 156 L.Ed.2d 376 (2003).

 Resolution of whether dismissal of the instant case is required under the act of state doctrine requires a consideration of whether this court would have to evaluate the legality of final, non-appealable acts of the Russian courts. The Russian government has not appeared in this case, and appears to have refused the service of process from the United States Department of State.[9] Although the acts

9. *See* Docket No. 76, Adv. No. 04–3952. The court notes that this appears, on its face, to

of the Russian government doubtless have a significant impact upon the efforts of Yukos to reorganize itself financially, the filing and conduct of this Chapter 11 case does not in itself require that this court sit in judgment on those acts.[10] The court concludes that the act of state doctrine does not form an independent basis requiring dismissal of the instant case.

### 11 U.S.C. § 1112(b)

■■■■■ The court finally turns to the grounds asserted for dismissal pursuant to Section 1112(b) of the Bankruptcy Code. Section 1112(b) of the Bankruptcy Code provides:

> Except as provided in subsection (c) of this section, on request of a party in interest or the United States trustee or bankruptcy administrator, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—
>
> (1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> (2) inability to effectuate a plan;
>
> (3) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (4) failure to propose a plan under section 1121 of this title within any time fixed by the court;
>
> (5) denial of confirmation of every proposed plan and denial of a request

made for additional time for filing another plan or a modification of a plan;

> (6) revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;
>
> (7) inability to effectuate substantial consummation of a confirmed plan;
>
> (8) material default by the debtor with respect to a confirmed plan;
>
> (9) termination of a plan by reason of the occurrence of a condition specified in the plan; or
>
> (10) nonpayment of any fees or charges required under chapter 123 of title 28.

11 U.S.C. § 1112(b). The list of matters enumerated in Section 1112(b) to constitute cause for conversion or dismissal is not exhaustive. *See* H. Rep. 595, 95th Cong., 1st Sess. 406 (1977), reprinted in 1978 U.S.C.C.A.N. 5963. In addition to the enumerated matters, courts have considered the totality of the circumstances. *In re Chaffin*, 816 F.2d 1070 (5th Cir.1987), *mod.* 836 F.2d 215 (5th Cir.1988). Courts are required to consider the debtor's good faith, which depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. *In re Elmwood Dev. Co.*, 964 F.2d 508 (5th Cir. 1992).

■■■■ Several facts in the instant case contribute to cause for its dismissal. Yukos filed for Chapter 11 relief stating an

---

violate the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638. There is no evidence before this court at this time that the Russian Federation has repudiated the 1965 Hague Convention. The court makes no finding as to the effectiveness of such attempted service.

10. The court notes, however, that Yukos has filed a motion requesting that the court order the Russian government to arbitration. Because the court has concluded that the instant case is to be dismissed, the court does not reach the question of whether the act of state doctrine would apply to the court's consideration of the motion to compel arbitration.

intention to reorganize. However, the reorganization contemplated in Yukos' plan is not a financial reorganization. Indeed, since most of Yukos' assets are oil and gas within Russia, its ability to effectuate a reorganization without the cooperation of the Russian government is extremely limited.

The funds which created jurisdiction in this court were transferred to banks in the United States less than one week prior to the filing of the petition, and were transferred for the primary purpose of attempting to create jurisdiction in the United States Bankruptcy Court.

Yukos seeks to substitute United States law in place of Russian law, European Convention law, and/or international law, and to use judicial structures within the United States in an attempt to alter the creditor priorities that would be applicable in the law of other jurisdictions. Yukos appears to hope to subordinate its tax debt, and to transfer causes of action it believes it holds, into a trust for continued litigation.

Yukos has commenced or attempted to commence proceedings in several other forums, including the European Court of Human Rights, and in arbitration. In addition, Yukos has proceedings which appear to remain pending in Russia, and additionally may have access to a bankruptcy proceeding in the arbitrazh courts of Russia.

The question of whether Yukos is entitled to relief in each such other forum depends on the construction of the laws of those jurisdictions. None of the evidence with respect to the instant motion suggests that this court is uniquely qualified, or more able than the other forums, to consider the issues presented. The court notes that the experts who appeared at the hearing on the instant motion, all of whom were competent, credible, and articulate,

disagree on the degree to which relief would be available in each forum. Moreover, some of the determinations which are necessary to resolution of the underlying disputes appear to turn on construction of statutes enacted in a foreign language, and upon which there is room for reasonable disagreement as to the translation of the language from Russian to English. Additionally, it is not clear that this court can obtain personal jurisdiction of the pertinent parties sufficient to grant much of the relief sought in the instant case.

The vast majority of the business and financial activities of Yukos continue to occur in Russia. Such activities require the continued participation of the Russian government, in its role as the regulator of production of petroleum products from Russian lands, as well as its role as the central taxing authority of the Russian Federation.

Finally, although the act of state doctrine, standing alone, does not compel dismissal of the instant case, the evidence indicates that Yukos was, on the petition date, one of the largest producers of petroleum products in Russia, and was responsible for approximately 20 percent of the oil and gas production in Russia. The sheer size of Yukos, and correspondingly, its impact on the entirety of the Russian economy, weighs heavily in favor of allowing resolution in a forum in which participation of the Russian government is assured.

The court concludes, based on the totality of the circumstances, that the instant Chapter 11 case should be dismissed. However, the court will retain jurisdiction for the purposes of considering fee applications, and determining disposition of the funds paid into the court's registry in the instant case.